# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

JACK TYLER ENGINEERING
COMPANY, INC.,

    Plaintiff,

v.                                                 Case No. 10-02373

COLFAX CORPORATION,

    Defendant.

                                            /

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION IN LIMINE AND DENYING DEFENDANT'S MOTION IN LIMINE

Plaintiff Jack Tyler Engineering Company, Inc., ("JTE") retained Dr. Ralph Scott to calculate its alleged lost profit damages resulting from Colfax Corporation's ("Colfax") termination of the parties' distributorship agreement. Colfax moves to exclude Scott's testimony, arguing that the methodology he employed to calculate lost profit damages is unreliable. Colfax retained its own expert, Z. Christopher Mercer, to provide a rebuttal of Scott's report. JTE has moved to exclude portions of Mercer's report as unreliable and irrelevant. The motions have been fully briefed, and a hearing is unnecessary. For the following reasons, the court will deny both motions.

## I. BACKGROUND

On September 28, 2001, JTE entered into an exclusive distributorship agreement with Colfax, a manufacturer of industrial and construction products. JTE held the exclusive distributorship rights to sell Colfax products in western Tennessee, northern Mississippi, and Arkansas. While Colfax promised that the parties would reduce their

agreement to a formal, written agreement by the end of 2004, the agreement was never memorialized. Colfax unilaterally terminated the agreement effective October 15, 2007.

JTE claims that Colfax terminated the distributorship agreement without good cause or proper notice and opportunity to cure. In April 2010, JTE filed suit against Colfax alleging (1) violation of Tennessee's Repurchase of Terminated Franchise Inventory Act, Tenn. Code Ann. § 47-25-1301 *et seq.*; (2) breach of contract; (3) fraud; and (4) unjust enrichment. The court dismissed JTE's fraud count for failure to state a claim. Colfax moved for summary judgment on the remaining counts, arguing that JTE did not suffer damages as a result of the termination. The court denied summary judgment.

Plaintiff retained Dr. Ralph Scott, an economist with Economic Financial Consulting Group, Inc., to submit a report calculating JTE's lost profit damages (the "Scott Report"). Colfax moves to exclude the Scott Report under Federal Rule of Evidence 702, arguing that the expert testimony is unreliable. Colfax also hired Z. Christopher Mercer, an economist and chief executive officer of Mercer Capital Management, Inc., to submit his own report rebutting the Scott Report (the "Mercer Report"). JTE moves to exclude three topics discussed in the Mercer Report as either unreliable under Rule 702 or irrelevant under Rules 402 and 403.

## II. STANDARD

Pursuant to Federal Rule of Evidence 702, an expert witness's testimony is only admissible if it "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). In determining reliability, the court must assess "whether the reasoning or methodology underlying the

2

testimony is scientifically valid." *Id.* at 592-93. The *Daubert* Court provided a non-exclusive list of factors that courts should consider when analyzing reliability: "(1) whether a theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) the known or potential rate of error; and (4) general acceptance." *First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 334 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 593-94) (quotation marks and alterations omitted). However, the test for determining reliability is "flexible," and the court is given "the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141-42 (1999) (citing *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 143 (1997)).

An expert's testimony should be excluded when it "amounts to mere guess or speculation." *United States v. L.E. Cooke Co., Inc.*, 991 F.2d 336, 342 (6th Cir. 1993). However, "where the opinion has a reasonable factual basis, it should not be excluded." *Id.* "[M]ere weaknesses in the factual basis of an expert witness' opinion bear on the weight of the evidence rather than on its admissibility." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000) (citation and alterations omitted).

### III. DISCUSSION

Neither party challenges the qualifications of the opposing side's expert. Instead, Colfax and JTE argue, respectively, that the Scott Report and portions of the Mercer Report should be excluded under Rule 702 for containing unreliable assumptions and methodology. JTE further claims that a portion of the Mercer Report should be excluded as irrelevant under Rule 402. The court will address each motion in turn.

3

## A. Motion to Exclude the Testimony of Dr. Ralph Scott

The Scott Report calculates JTE's lost profit damages using the discounted cash flow methodology. Colfax agrees that the methodology itself is appropriate but argues that Scott has made a number of baseless assumptions in applying the methodology that render the Scott Report unreliable.

First, Colfax objects to Scott calculating JTE's base annual sales of Colfax products based on JTE's average sales of Colfax products during the three-year period of 2004-2006. Colfax argues that the base annual sales are speculative because Scott failed to analyze JTE's historic overall profitability as well as JTE's sales of Colfax products outside of that time period. While considering such additional information may provide a more accurate base annual sales figure, Scott did not determine JTE's base annual sales by merely guessing. Instead, Scott calculated the figure from JTE's actual sales of Colfax products during that time period. As the Scott Report utilized reasonable facts when assuming JTE's base annual sales of Colfax products, that testimony should not be excluded.

Second, Colfax argues that Scott failed to consider all of the relevant risk factors and external market forces in arriving at a discount factor of 6.0%. Colfax argues that the discount factor is speculative because the Scott Report does not explain how the discount factor was calculated or the sources upon which Scott relied. Furthermore, Colfax claims that the discount factor should, but does not, account for the financial health of JTE, the potential loss of a product line, an industry premium, industry trends, Colfax sales trends, and future economic conditions.

Scott, during his deposition, explained how he formulated the discount rate. He stated that he applied a 2.5% real rate of return, 2.35% equity risk premium, 3.1% size premium, and -2% adjustment for analyzing only "one [product] line instead of a business valuation to account for possible real growth." (Dkt. # 101-3 at Pg 38.) He also provided the sources from which he obtained some of the underlying numbers and explained the subjective judgments he made in arriving at those final figures. (*Id.* at Pg 38-40.)

Determining the appropriate discount rate is a question of fact. *Energy Capital Corp. v. United States*, 302 F.3d 1314, 1332 (Fed. Cir. 2002) (collecting authority). "[T]he 'choice of a discount rate is not a purely mechanical calculation,' but rather is a decision that 'requires a number of subjective judgments.'" *Fail-Safe, L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 894 (E.D. Wis. 2010) (quoting Robert M. Lloyd, *Discounting Lost Profits in Business Litigation: What Every Lawyer and Judge Needs to Know*, 9 Transactions 9, 63 (2007)). Here, Scott formulated the 6.0% discount rate from source material and subjective judgments based on his expertise. Whether Scott's discount factor analysis incorrectly excludes additional considerations bears on the weight of his analysis, but not its admissibility.

The Scott Report assumes that no variable costs are associated with JTE's sale of Colfax products. Under Tennessee law, damages for lost profits are based on net profits. *Waggoner Motors Inc. v. Waverly Church of Christ*, 159 S.W.3d 42, 59 (Tenn. Ct. App. 2004). When calculating the loss of expected profits from the sale of goods, "the expected net profits equals the expected revenue from the sale of the goods minus the cost of the goods sold minus all of the seller's expenses fairly attributable to the sale

5

of goods." *Id.* Scott did not include variable costs in his analysis after Jack Tyler, the owner and chief executive officer of JTE, informed Scott that there are no variable costs attributed to the sale of Colfax products. (Dkt. # 101-3 at Pg 24.) Scott, however, acknowledged at his deposition that certain variable costs could exist. (*Id.*) Colfax argues that such an admission demonstrates that the Scott Report should have accounted for variable costs and that Scott improperly relies on Tyler's anticipated testimony in assuming zero variable costs.

Similarly, the Scott Report assumes that JTE did not mitigate its damages based on Scott's conversations with Tyler. Scott claims that his Report considers the possibility that JTE mitigated, but that Tyler advised him that no mitigation opportunities existed and that JTE did not mitigate. (Dkt. # 101-3 at Pg 49.) Scott avers that his ability to account for mitigation could not be based on anything else besides his conversations with Tyler. As Scott testified at his deposition, "I have no way of knowing what [Tyler's] mitigation opportunities are. [Tyler] is the expert in the business." (*Id.*) Colfax claims that the assumption is baseless, arguing that JTE "clearly" mitigated its damages because JTE earned higher profits in 2007 and 2008, after the contract was terminated, than at any other time when it was selling Colfax products.

While Colfax objects to Scott not including variable costs and mitigation in his Report, Colfax is unable to identify any variable costs or mitigation opportunities. Instead, Colfax supports its conclusion based on its own speculative assumptions: (1) variable costs must exist because Scott stated that they could exist; and (2) JTE mitigated its damages because it realized higher profits immediately after Colfax terminated the contract. Scott, on the other hand, considered accounting for variable

6

costs and mitigation but did not do so based on his conversations with Tyler, an individual with intimate knowledge of JTE's costs from selling Colfax products and of JTE's mitigation opportunities after the contract was cancelled. While Scott's assumptions may not be based on substantial evidence, they are also not "so unrealistic and contradictory as to suggest bad faith" such that his report should be excluded. *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (citation omitted).

Colfax claims that the Scott Report unjustifiably calculates JTE's lost profits into perpetuity. After determining past losses year by year for five years (2008-2013), the Scott Report calculates projected future losses year by year for fifteen years (2013-2028) and then assigns a capitalized terminal value. Colfax argues that by calculating damages into perpetuity, the Scott Report assumes that JTE and Colfax would continue their business relationship indefinitely and ignores the fact that manufacturers often terminate retail sales agreements with its representatives. Furthermore, Colfax alleges that it was allowed to terminate its contract with JTE upon giving proper notice. Colfax argues that even if it did not cancel the contract on October 15, 2007, it would have done so much sooner than the twenty-year period after the contract's termination for which Scott calculated lost profits.

In assessing lost profit damages, the Scott Report attempts to determine the value of the Colfax product line. Scott, at his deposition, explained that by calculating damages into perpetuity, his Report assumes that the Colfax product line is a part of a business that, as an entity, could theoretically last forever. Scott stated that even though Tyler could not operate JTE indefinitley, he could sell the company, and JTE's value would be impacted by the product lines that JTE possessed at the time of the

7

sale. Thus, Scott asserts that calculating damages into perpetuity is appropriate in order to establish the value of the Colfax product line. Even Colfax's expert, Z. Christopher Mercer, agrees that when determining the value of a portion of a business, the discounted cash flow method provides a forecast for a finite number of years at which point a terminal value is calculated. (Dkt. # 109-15 at Pg 2-3.) Colfax, therefore, does not dispute the methodology for calculating damages into perpetuity, but rather the length of time for which the Scott Report calculates JTE's lost profits from losing the Colfax product line. Thus, Colfax's argument fails.

Finally, Colfax claims that the Scott Report is not based on reliable data because Scott failed to analyze JTE's overall sales as compared to its sales of only Colfax products. Yet Colfax provides no support for the assertion that the discounted cash flow method requires such an analysis. Scott calculated JTE's lost profits based upon the actual sales of Colfax products made by JTE while a distributor for Colfax. The court reiterates that "where the opinion has a reasonable factual basis, it should not be excluded." *United States v. L.E. Cooke Co., Inc.*, 991 F.2d 336, 342 (6th Cir. 1993).

When determining whether an expert's report is reliable under Rule 702, "[t]he focus . . . must be on principles and methodology, not on the conclusions they generate." *Daubert*, 509 U.S. at 595. Here, Colfax does not contest Scott's qualifications or the methodology he employed in calculating JTE's lost profits. Instead, Colfax argues that Scott's analysis does not account for all of the relevant factors needed to accurately calculate JTE's lost proftis. Such concerns do not warrant excluding Scott's testimony, but rather should be addressed by Colfax at trial. Accordingly, the court will deny Colfax's motion to exclude Scott's testimony.

## B. Motion to Exclude the Testimony of Z. Christopher Mercer

Mercer completed a report challenging the validity of Scott's damages calculation. JTE recognizes that most of the Mercer Report is appropriate for a jury to consider. However, JTE seeks to exclude three topics of the Mercer Report.

First, JTE argues that ex-ante discounting, which the Mercer Report applies, is an unreliable methodology that "has been soundly rejected" in *Energy Capital Corp. v. United States*, 302 F.3d 1314 (Fed. Cir. 2002). The Scott Report applies ex-post discounting, which discounts damages to the date of judgment. Ex-ante discounting, on the other hand, discounts damages to the date of the breach. JTE argues that *Energy Capital* definitively precludes courts from allowing ex-ante discounting. In that case, the court opined:

> In many cases, the appropriate date for calculation of damages is the date of breach. That rule does not apply, however, to anticipated profits or to other expectancy damages that, absent the breach, would have accrued on an ongoing basis over the course of the contract. In those circumstances, damages are measured throughout the course of the contract. To prevent unjust enrichment of the plaintiff, the damages that would have arisen after the date of judgment ("future lost profits") must be discounted to the date of judgment.

*Id.* at 1330 (citations omitted).

The court disagrees with JTE's interpretation that *Energy Capital* ruled that discounting damages to the date of the breach is an unreliable methodology that should always be excluded under Rule 702. Notwithstanding the fact that this court is not bound by the Federal Circuit's ruling on the matter, *Energy Capital* does not explain why ex-ante discounting is an inappropriate and unreliable methodology for calculating lost profits in all circumstances. Indeed, whether ex-post or ex-ante discounting should be

applied "depend[s] on the facts of the case" because "[s]ome damages cases involve higher degrees of uncertainty than others." Peter Schulman, *Economic Damages: Discounting Concepts and Alternatives*, 28 Colo. Law. 41, 45 (1999). Ex-ante discounting may be the preferred method when the case "involve[s] businesses with an erratic earnings history or a history of losses" and "do[es] not involve stable, growing businesses with a history of profitability and steady growth rates." *Id.* The Mercer Report discusses JTE's profit history since 2000 to illustrate that JTE has experienced significant losses and financial problems. Mercer then concludes that ex-ante discounting should be applied in this case. While JTE maintains that its lost profits should be discounted ex-post instead of ex-ante, the methodology of ex-ante discounting is reliable. Therefore, Mercer's testimony on the matter will not be excluded.

JTE obejcts to Mercer's criticism of Scott's failure to account for variable costs and mitigation. JTE claims that the Scott Report considers variable costs and mitigation but, based on Scott's conversations with Tyler, assumes that no variable costs or mitigation opportunities existed. The Mercer Report disagrees with both assumptions. Mercer opines that it is unreasonable to assume that all of JTE's costs attributed to the sale of Colfax products are fixed as "there are marginal costs associated with marginal activity." (Dkt. # 107-5 at Pg 15.) In regards to mitigation, Mercer argues that JTE's significant increase in gross sales in 2007 indicates that JTE did, in fact, successfully mitigate any damages resulting from Colfax's termination of the contract. JTE contends that Mercer's critiques of Scott's assumptions should be excluded as purely speculative because Scott cannot identify any variable costs or prove that JTE mitigated.

Furthermore, JTE asserts that the testimony should be excluded because Scott's analysis is "rooted firmly in the evidence in the record." (Dkt. # 108 at Pg 10.) The court disagrees. Mercer's criticisms, which are based on Colfax's tax returns and his expertise, are sufficiently reliable to be presented to a jury. The Scott Report excludes variable costs and mitigation based solely on Tyler's anticipated testimony. Mercer is certainly allowed to attack these assumptions.

Finally, JTE argues that the Mercer Report's discussion of background industry information and Colfax's global economic performance should be excluded as irrelevant under Rules 402 and 403. The standard for relevant evidence is "extremely liberal." *United States v. Whittington*, 455 F.3d 736, 738 (6th Cir. 2006) (citation omitted). "'[E]vidence having *any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence' is relevant." *Robinson v. Runyon*, 149 F.3d 507, 512 (6th Cir. 1998) (quoting Fed. R. Evid. 401)). Mercer was retained to provide a rebuttal to the Scott Report. JTE asserts that Mercer's discussion of industry trends and outlooks does not rebut the Scott Report, but instead only supports Colfax's anticipated defense that JTE was terminated for cause for low sales.

The Mercer Report states that the Scott Report did not include an "analysis of the local, regional or national economic outlooks as of the date of termination or subsequent to the termination," (Dkt. # 107-5 at Pg 5), which Mercer claims is an important consideration when determining lost profits. Mercer discusses industry trends and Colfax's performance to illustrate the type of analysis that Scott should have conducted as well as to highlight the fact that the Scott Report makes no "attempt to ascertain why

11

Jack Tyler Company was experiencing sharply declining sales of Colfax products and sharply lower gross margins throughout the business." (Dkt. # 107-5 at Pg 14.) Mercer's discussion of industry trends, therefore, is relevant to his critique of the Scott Report. Furthermore, even if Mercer's discussion of industry trends was offered only to bolster Colfax's defense that it terminated JTE for cause for low sales, such information would make that defense more probable and, therefore, is relevant and admissible under Rules 402 and 403.

As JTE's objections do not warrant excluding any portion of Mercer's testimony, the court will deny JTE's motion.

## IV. CONCLUSION

Accordingly, IT IS ORDERED that Defendant's motion in limine [Dkt. # 100] and Plaintiff's motion in limine [Dkt. # 107] are DENIED.

       s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: April 10, 2013

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 10, 2013, by electronic and/or ordinary mail.

                                            s/Lisa Wagner
                                            Case Manager and Deputy Clerk
                                            (313) 234-5522